IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SEAN MORIARTY,                    :        CIVIL ACTION NO. **3:CV-08-1532**
                                  :
        Plaintiff                 :        (Judge Munley)
                                  :
        v.                        :        (Magistrate Judge Blewitt)
                                  :
EDWARD RENDELL, GOVERNOR OF       :
PENNSYLVANIA, et al.,             :
                                  :
        Defendants                :

## REPORT AND RECOMMENDATION

### I. Background.

On August 13, 2008 Plaintiff, Sean Moriarty, an inmate at the State Correctional Institution

at Coal Twp. ("SCI-Coal Twp.")[1], Coal Township, Pennsylvania, filed another civil rights action

pursuant to 42 U.S.C. § 1983, naming as Defendants Edward Rendell, Governor of Pennsylvania,

Jefferey Beard, Secretary of the Pennsylvania Department of Corrections ("DOC"), Calvin Johnson,

Secretary of Pennsylvania Department of Health, and Catherine McVey, Chairperson of the

Pennsylvania Board of Probation and Parole ("PA Board"). (Doc. 1, pp. 1-3). Plaintiff states that

this Court has jurisdiction over his case pursuant to 28 U.S.C. § 1331 and § 1343(a). (Doc. 1, p.

---

[1]Plaintiff previously filed a civil rights action on May 9, 2001, with this Court, Civil No. 01-1113, M.D. Pa. Plaintiff's case No. 01-1113 alleged, in part, that on January 5, 1999, while he was in the custody of the Bradford County Correctional Facility ("BCCF"), he was unlawfully arrested by Defendant Hunt, who was employed as a Patrolman with the Towanda Borough Police Department. Plaintiff's case No. 01-1113 was closed by the District Court on August 21, 2003.
   The claims in the present case, 08-1532, mainly involve Plaintiff's First Amendment free exercise of religion claim and RLUIPA claim.

3).[2]  Plaintiff simultaneously filed with his 24-page typed Complaint a 16-page Affidavit in support thereof.  (Doc. 2).  Plaintiff also filed a motion for leave to proceed *in forma pauperis*. (Doc. 3).  Further, Plaintiff attached voluminous Exhibits,  A-1 to A-11 and B-1 to B-8, C-1 to C-7, D-1 to D-6 and E-1 to E-7, to his Complaint.[3]

Plaintiff also filed a 2-page, 5-paragraph Motion for Appointment of Counsel on August 13, 2008. (Doc. 4).[4]

## II.  Allegations of Complaint.

In his Complaint, Plaintiff essentially claims that his right to free exercise of religion was violated by the Defendants who enacted and enforced a policy that made it mandatory for him to attend the faith-based 12-step alcoholics anonymous styled program utilized by the Pennsylvania Department of Corrections ("PA DOC") in its Therapeutic Community Substance Abuse Treatment Program ("TCTP").  (Doc. 1, pp. 4-5).  Plaintiff also seems to claim that he suffered adversity as a result of exercising his First Amendment free exercise of religion right since he voiced his unwillingness to participate in the religious portion of the stated program and that this affected his eligibility for parole.[5]   (Doc. 1, pp. 8, 10). Plaintiff states that when he was a participant in the

---

[2]Plaintiff also requests the Court to exercise its supplemental jurisdiction under 28 U.S.C. § 1367 with respect to unmentioned state law claims.   Doc. 1, p.  3, ¶ 8.

[3]We note that in screening a prisoner's complaint under the PLRA, the Court can consider exhibits attached to the complaint. *Hughes v. Kostingo*, 2006 WL 367890, * 2 (W.D. Pa.).

[4]By separate Order dated September 18, 2008, we have denied Plaintiff's Motion for Appointment of Counsel (Doc. 4).  (Doc. 11).

[5]While Plaintiff states that he has a "liberty interest in parole ... eligibility" (Doc. 1, p. 8), Plaintiff has no right to parole under Pennsylvania law.  As the Court stated in *Ledwith v. Brooks*,

TCTP, he was forced to practice religious beliefs not his own and, that he was punished and discriminated against in violation of the Fourteenth Amendment for voicing his unwillingness to participate in the religious portion of the stated program. (*Id.*,p. 10).

Plaintiff asserts three so-called "Religious Claims," Claim One under the First Amendment and Claims Two and Three under RLUIPA. (*Id.*, pp. 4-10). Plaintiff also adds a Pennsylvania state law basis for his three Religious claims, namely the "Pennsylvania Drug and Alcohol Abuse Control Act, 71 P.S. §1690.107" ("DACA"). (*Id.*). In his "Religious Claims," Plaintiff avers that the Defendants compelled him to participate in the faith-based TCTP, and that he had to practice a religion and beliefs promoted by the DOC that were not his own. Plaintiff also seems to state that he requested to attend an available non-religious substance abuse treatment program as an alternative to the TCTP's mandatary attendance of faith-based activities, and that his request was denied. Plaintiff seems to state that the DOC "psychologically coerce[d] [the] requisite mandatory faith based attendance upon [him]," and that if he refused he would not receive substance abuse treatment services, he would not be placed into the "Parole Violator's Group" Program, the DOC would not give its recommendation for his parole, and the Pennsylvania Parole Board would not render a decision granting him parole. (*Id.*, pp. 5, 7 and 10). Plaintiff avers that he was punished based on his objections that his First Amendment right to religious freedom was being violated by Defendants when he was made to participate in the TCTP and its "mandatory attendance of faith based twelve (12) step alcoholics anonymous self-help." (*Id.*, p. 6). Plaintiff also seems to state that

2007 WL 804189, * 5 (W.D. Pa.), an inmate "does not have a constitutionally-protected liberty interest in release on parole that arises under state law."

by requiring his participation in the DOC's TCTP, Defendants deprived him of his right to equal protection since they did not allow him to retain his First Amendment free exercise of religion right. (*Id*.).[6]

In addition to his Religious Claim One based on a violation of his right to free exercise of religion under the First Amendment and Fourteenth Amendment, as well as the DACA, Plaintiff asserts two Religious Claims under RLUIPA in which he states that Defendants violated RLUIPA by "requiring his mandatory attendance in the faith based twelve (12) step alcoholics anonymous self-help utilized by [the TCTP] employed by the [PADOC]." (*Id*., p. 9).

As relief with respect to his three Religious Claims, Plaintiff requests a declaratory judgment that Defendants' conduct violated his Constitutional rights as well as compensatory damages in the

---

[6]We note that in all of his claims, Plaintiff uses run-on sentences and similar phrases that make it difficult to construe exactly what conduct Plaintiff is alleging to be Constitutional violations. (Doc. 1, pp. 4-20). Further, Plaintiff does not specifically state the personal involvement of any Defendant with respect to his claims. (*Id*.). Plaintiff only generally refers to "Defendants" in his claims. (*Id*.). Plaintiff only generally states, in all his claims, that in January 2007 Defendants enacted, enforced and/or endorsed a policy that PA DOC inmates must participate in the TCTP. (*Id*.). Plaintiff does not state how any named Defendant was personally involved in the decision at SCI-Coal Twp. to require him to participate in the TCTP and how any Defendant coerced him to comply with the TCTP's "mandatory faith based self-help attendance" contrary to his own religious beliefs. (*Id*., p. 7). Further, Plaintiff does not state what specific adverse action any Defendant took when he complained about the religious nature of the TCTP and requested to attend the "available non-religious and/or secular self-help" program as an alternative to the TCTP. Nor does Plaintiff state that any named Defendant personally took an adverse action against him for his insistence on exercising his First Amendment right to free exercise of his religious beliefs. Plaintiff does not state how any Defendant forced him to support and practice a religion that was not his own and that any Defendant denied his request to attend the alternative non-religious program. Rather, Plaintiff appears to have named his Defendants based on their positions as officials of Pennsylvania, *i.e.*, *respondeat superior*. As stated below, *respondeat superior* is not a basis to hold a state official liable in a § 1983 action.

amount of $5 million against Defendants jointly and severally, and punitive damages in an unspecified amount.  (*Id.*, p. 11).

Plaintiff's request for specific amounts of monetary relief against Defendants in his Complaint (Doc. 1, p. 11) should be stricken.  Plaintiff's relief request for a  specific amount of compensatory damages from Defendant should be stricken from his Complaint.  (*Id.*).  Since Plaintiff seeks unliquidated damages, he cannot claim a specific sum of relief.  Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's request  for specific monetary damages should be stricken from his Complaint.  *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure.

Thus, we will recommend that Plaintiff's request for $5 million in compensatory damages be stricken from his Complaint.

Plaintiff requests additional relief on pp. 22-23 of his Complaint (Doc. 1) with respect to both his Religious Claims and his Free Speech Claims, namely injunctive relief.  "Suits against state officials for injunctive relief  . . .  are not prohibited [by the Eleventh Amendment], nor are suits against state officials for actions in their individual capacities." *McGrath v. Johnson*, 67 F.Supp.2d 499, 511 (E.D. Pa. 1999) (citations omitted).

Moreover, we construe Plaintiff as suing Defendants with respect to his three Religious Claims in their personal and official capacities.  (Doc. 1, p. 4).  To the extent that Plaintiff is seeking monetary damages from Defendants in their official capacities, this request for relief should be dismissed.  Plaintiff cannot sue the state Defendants for monetary damages in their official capacities since this is barred by the Eleventh Amendment.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *McGrath v.*

*Johnson*, 67 F.Supp.2d at 511; *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential)("The Eleventh Amendment does not bar suits against state officials in their personal capacities.").   Nor can Plaintiff recover punitive damages from Defendants in their official capacities. *See Atwell, supra*.

Thus, insofar as Plaintiff is seeking punitive damages from Defendants in their official capacities, this request for relief should be also dismissed.  (Doc. 1, p. 11).

In addition to his three Religious Claims, Plaintiff also raises four so-called "Free Speech Legal Claims," Claims Four through Seven, in which he claims, *inter alia,* that as a participant in the TCTP, his First Amendment free speech right was violated because he was forced to remain silent with respect to his objections that the program violated his free exercise of religion rights and that he was being forced to practice a religion, that he was required to remain silent  about his belief that the TCTP provided unlicensed substance abuse treatments services and that he was made to receive unlicensed services, that his First Amendment right to access to courts and First Amendment free speech right were violated since he was required to be silent regarding the "requisite mandatory restricted access to [the prison] law library" of one hour per week for participants in the TCTP[7], and that the DOC compelled him, when he was a participant in the TCTP, to remain silent

---

[7]We find that Plaintiff has failed to state a First Amendment access to court claim since he has not alleged an actual injury to any of his legal claims.  As the Third Circuit Court stated in *Salkeld v. Tennis*, C.A. No. 07-1776, (3d Cir. 9-13-07), slip op. p. 3, 2007 WL 2682994, * 1 (3d Cir. 2007) (Non-precedential):

> An inmate alleging a violation of *Bounds v. Smith*, 430 U.S. 817 (1977), must show an actual injury, a requirement that derives from the doctrine of standing.  *Lewis v. Casey*, 518 U.S. 343, 349 (1969). Specifically, the inmate must show that the alleged shortcomings in the prison policy "hindered his efforts to pursue a legal claim."  *Id*.

"with regard to his requisite self-identification as [an] alcoholic/addict." (Doc. 1, pp. pp. 8-20). With respect to his seventh Legal Claim, we construe Plaintiff as alleging that his First Amendment free speech right was violated since he was made to identify himself, as a requirement of the TCTP, by using the phrase "I'm an alcoholic addict" and that he voiced his unwillingness to comply with this requirement. (*Id.*, p. 20).

As relief with respect to his four Free Speech Claims, Plaintiff requests a declaratory judgment that Defendants' conduct violated his First Amendment free speech Constitutional rights as well as compensatory damages in the amount of $5 million against Defendants jointly and severally, and punitive damages in an unspecified amount. (*Id.*, p. 21).

---

at 351. *See also Reynolds v. Wagner*, 128 F.3d 166, 183 (3d Cir. 1997) (no First Amendment right to subsidized mail). However, the injury requirement is not satisfied by just any type of frustrated legal claim; the legal claim must relate to a direct or collateral challenge to a prisoner's sentence of conditions of confinement. *Lewis*, 518 U.S. at 349 ("Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.") (emphasis in original).

In *O'Connell v. Sobina*, 2008 WL 144199, * 10 (W. D. Pa.), the Court stated:

In *Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. *Christopher*, 536 U.S. at 415.

As stated above, Plaintiff's request for specific amounts of monetary relief against Defendants with respect to his four Free Speech Claims in his Complaint (Doc. 1, p. 21) should be stricken. Also, Plaintiff cannot sue the state Defendants for monetary damages in their official capacities and he cannot recover punitive damages from Defendants in their official capacities.   Plaintiff also requests injunctive relief with respect to his four Free Speech Claims.  (*Id*., pp. 22-23).

Plaintiff prefaces both sets of his claims, *i.e.* Religious Claims and Free Speech Claims, with a statement that Defendants, in their personal and official capacities violated his Constitutional rights under the First Amendment Free Exercise Clause, the First Amendment Free Speech Clause, the Cruel and Unusual Punishment Clause of the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. (*Id*., p. 4, ¶ 11.  and p. 12, ¶ 17.).  Plaintiff also raises claims under RLUIPA, Claims Two and Three.

As stated, Plaintiff also seeks this Court to exercise its pendant jurisdiction over all of his claims under Pennsylvania State law, DACA.  (Doc. 1, pp. 4-20).  We find Plaintiff's state law claims under DACA should be dismissed.  The Court in *Kretchmar v. Beard*, 2006 WL 2038687, * 3 (E.D. Pa.), stated that the inmate's state law claims were barred by the Eleventh Amendment and dismissed them for lack of subject matter jurisdiction.  The *Kretchmar* Court also stated:

> "To the extent that Plaintiff brings this action for violations of
> federal law, pursuant to § 1983 and RLUIPA, his suit against Defendants
> for injunctive and declaratory relief is permitted by the *Young*
> exception to Eleventh Amendment immunity.  Plaintiff's claims for
> violations of state law, however, do not fall under the exception of *Young,*
> and cannot be brought in federal court. " *Id.*

Based on *Kretchmar*, we find that Plaintiff's pendant state law claims under DACA asserted in all seven (7) of his claims (Doc. 1, pp. 4-20) are barred by the Eleventh Amendment and shall

8

recommend that they be dismissed.  *Id.*

Thus, for present purposes, we shall only consider Plaintiff's Constitutional claims in this § 1983 action.

Plaintiff indicates that he has exhausted all of his DOC administrative remedies with respect to all of his present claims. (Doc. 1, p. 3,  ¶ 9.).[8]  Plaintiff also references his numerous exhibits (*i.e.*, his B, C, D and E series Exhibits) to show that he has exhausted all of his DOC administrative remedies.

Plaintiff's Ex. A-4 attached to his Complaint (Doc. 1) indicates that as part of the Initial Treatment Recommendations, Plaintiff was recommended to complete Therapeutic Community drug/alcohol treatment while in prison due to his "extensive history associated with alcohol" and that he attend the Parole Violator's Group.  In a February 15, 2007 Inmate Request to Staff, Plaintiff stated that "I was discharged [from] TC (stated reason not ammendable (sic) to treatment)" on January 29, 2007, and that he filed a grievance about his discharge from the TC program.  (Doc. 1, Ex. A-6).  Plaintiff also asked about the consequences of his failure to complete the TC program. Plaintiff's exhibits also indicate that he was recently denied parole by the Pennsylvania Board on

---

[8]It is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit.  *Id.* at 230.  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under  § 1997e(a) applies to all actions regarding prisons conditions, including  § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.  See also Cutter v. Wilkinson*, 544 U.S. 709, 723, n. 12 (2005)("a prisoner may not sue under RLUPIA without first exhausting all administrative remedies").  However, Defendants have the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

April 17, 2008, due, in part, to his failure to complete prescribed prison programs, including a treatment program for substance abuse, such as the TC program.  (*Id.*, Ex. A-10).  Thus, Plaintiff claims that he was required  to  participate in a religious-based treatment program (*i.e.* the TCTP) as a condition for his release on parole.[9]

As stated, on August 13, 2008, Plaintiff filed a motion to proceed *in forma pauperis* and on August 14, 2008, he filed an authorization form.  (Docs. 3 and 6).

## III.  PLRA.

As stated, the Plaintiff has filed an application to proceed  *in forma pauperis* pursuant to 28 U.S.C. § 1915.  The Prison Litigation Reform Act of 1995,[10] (the "Act"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[11]  Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to

---

[9]We note that Plaintiff did not have a Constitutional right to participate in any  treatment program.  *See O'Connell v. Sobina*, 2008 WL 144199, * 17, n. 8 (W.D. Pa. 2008)(citing *McFadden v. Lehman*, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997)).

[10]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[11]The Plaintiff completed an application to proceed *in forma pauperis* and authorization to have funds deducted from his prison account.  The court then issued an administrative order directing the warden to commence deduction of the full filing fee due the court from the Plaintiff's prison trust fund account.  (Docs. 11 & 12).

state a claim on which relief may be granted;
or (iii) seeks monetary relief against a
defendant who is immune from such relief.

In reviewing the Complaint under 28 U.S.C. §1915(e)(2)(B), we find that Plaintiff does not state any claims under the First Amendment Free Speech Clause, the First Amendment right to access to the court,[12] the Cruel and Unusual Punishment Clause of the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment.  We find that while the Plaintiff has stated First  Amendment free exercise of religion claims and RLUIPA claims, he  is unable to maintain his action with respect to his three (3) Religious Claims as against the four (4) named Defendants, Rendell, Beard, Johnson and McVey, based only on *respondeat superior*.  Further, we find that all of Plaintiff's claims, to the extent that they are jointly based under Pennsylvania state law, *i.e.* the DACA, should be dismissed.

## IV.  Motion to Dismiss Standard.

In  considering  whether  a  pleading  states  an  actionable  claim,  the  court  must  accept  all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988).  A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed

---

[12]*See* note 7 above.  Since Plaintiff does not fully detail the basis for his reference to his First Amendment right to access to the court, we rely upon note 7 with respect to our recommendation that t his First Amendment claim be dismissed.

without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.).

## V. Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993).[13]

Named as Defendants are four (4) Pennsylvania state officials, including the Pennsylvania governor, the DOC Secretary, the Pennsylvania Secretary of Health and the Chairpersons of the Pennsylvania Board.  (Doc. 1, pp. 1-3).  Since Defendants that are individually named in Plaintiff's Complaint have been stated above, we shall not reiterate their names.

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id*.  Each named defendant must be shown, through the complaint's

---

[13]Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (per curiam) (a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983).

**VI. Discussion.**

   A. *Defendants Rendell, Beard, Johnson and McVey*

As discussed, we do not find that Plaintiff has sufficiently stated the personal involvement of the Pennsylvania state official, supervisory Defendants, Rendell, Beard, Johnson and McVey, with respect to any of his Constitutional claims. Rather, Plaintiff names the four (4) Pennsylvania officials as Defendants since they are responsible for all enacting and enforcing DOC polices with respect to state prisoners, such as the policies governing the TCTP. (Doc. 1, pp. 1-3). Plaintiff cannot sue a state official in a § 1983 action based on *respondeat superior* as he is clearly attempting to do with respect to Defendants Rendell, Beard, Johnson and McVey. *See Sutton v. Rasheed*, 323 F. 3d 236 (3d Cir. 2003). As noted above, Defendants Rendell, Beard, Johnson and

13

McVey are not alleged to have personally ordered the Plaintiff's participation in the TCTP and they are not alleged to have personally authorized any adverse actions against Plaintiff with respect to his opposition to the religious part of the TCTP.   Nor are Defendants Rendell, Beard, Johnson and McVey alleged to have directly played any role with respect to Plaintiff's alleged mistreatment caused by his opposition to  the TCTP.

Simply because Defendants Rendell, Beard, Johnson and McVey are alleged to be responsible for enacting and enforcing the TCTP does not meet the personal involvement requirement of a § 1983 action, especially since Plaintiff has no allegations that these Defendants were directly involved with respect to his mandatory placement in the program and the requirement that he participate in the faith based portions of the program.  Just because the TCTP was enacted and endorsed by Defendants Rendell, Beard, Johnson and McVey does not form the basis of a § 1983 action against them for violations of Plaintiff's First Amendment free exercise of religion right.  (*Id.*, pp. 4-20).  If Defendants' mere enactment of the TCTP was a sufficient basis to hold them liable in a § 1983 action, they would be potential defendants in every case filed by a state inmate who is challenging his placement in the TCTP.

In *O'Connell*, 2008 WL 144199, * 21, the Court recently stated:

> Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. *Rode*, 845 F.2d at 1207.  "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id. See also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).  Moreover, in order to maintain a claim for supervisory liability, a plaintiff must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in

a subordinate's violations.  *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir. 1997); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Defendants Rendell, Beard, Johnson and McVey are not alleged to have personally violated any of the Plaintiff's constitutional rights.  Defendants Rendell, Beard, Johnson and McVey are not alleged to have participated in violating Plaintiff's rights by requiring him to participate in the TCTP. Since there is insufficient personal involvement alleged on the part of Defendants Rendell, Beard, Johnson and McVey in any constitutional violation, they should be dismissed entirely from this action.  *Rizzo, supra; Parratt, supra; O'Connell, supra*.

We will recommend that Plaintiff be permitted to amend his pleading with respect to his First Amendment free exercise claim and claims under RLUIPA, Claims 1 - 3 (*i.e.* three Religious Claims), to name the prison staff personally involved in the conduct he asserts was unconstitutional.

B.  *Absolute Immunity of Defendant McVey*

Plaintiff names as a Defendant Catherine McVey, Chairperson of the Pennsylvania Board since he was denied parole based, in part, on his failure to complete prescribed prison programs, including the TCTP.  (Doc. 1, Ex. A-10).  Since Plaintiff's allegations against the Defendant Pennsylvania Board Chairperson involve administrative acts and adjudicative duties, this Defendant is entitled to absolute immunity.  *See Williams v. Consovoy*, 53 Fed. Appx. 664, 665 ( 3d Cir. 2002) (Non-precedential) (Bench Order)(citing *Cleavinger v. Saxner*, 474 U.S. 193 (1985);  *Williams v. Consovoy,* 453 F. 3d 173, 176, n. 2 (Parole Board members who denied inmate parole were entitled to absolute immunity "because the acts they performed were wholly adjudicative in nature").  *See also Davis v. PA Board of Probation and Parole*, Civil No. 06-2019, M.D. Pa. (6-30-08

Memo, J. Conaboy).

In *Hayes v. Muller*, 1996 WL 583180, * 4 (E.D. Pa.), the Court stated:

> "[P]robation and parole officers are entitled to absolute
> immunity when they are engaged in adjudicatory duties."
> *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989).
> Absolute immunity extends to those activities which are
> "an integral part of the judicial process" and "intimately
> associated with the judicial phase of the criminal process.
> *Thompson v. Burke*, 556 F.2d 231, 237 (3d Cir. 1977)
> (citation omitted).  Adjudicatory activities include conducting a
> parole revocation hearing.  *See Farrish v. Mississippi State
> Parole Bd.*, 836 F.2d 969, 974-75 (5th Cir. 1988) (perceiving
> no distinction between "denying parole and revoking parole
> or between parole members and other parole officials to the
> extent that they perform the parole board's adjudicatory
> function . . . [P]arole board members must receive absolute
> immunity in a suit for damages by a parolee alleging that
> revocation procedures violated his right to due process").

We find that Plaintiff's allegations against the Defendant Pennsylvania Board member (McVey) and the Board's decisions to deny him parole related to the Board member's adjudicatory function intimately associated with the judicial process, not investigative activities.  Thus, we find that Pennsylvania Board member McVey is entitled to absolute immunity in this case.  *See Hayes, supra*.  Therefore, we will recommend that all of Plaintiff's claims against the Defendant Pennsylvania Board member, McVey, be dismissed since we find she is entitled to absolute immunity.

C. *First Amendment Free Exercise of Religion Claims and RLUIPA Claims*

Plaintiff alleges that the four (4) Pennsylvania officials named as Defendants, through their various positions with the state, were responsible for enacting and enforcing state policies which required his mandatory attendance in the faith-based 12-step alcoholics anonymous self-help

16

protocols as part of the DOC's TCTP.  Plaintiff states that by compelling his participation in the TCTP, he was forced to practice a religion that was not his own and forced to follow beliefs of a religious faith advanced and promoted by the state.  Plaintiff states that there were less restrictive means available for the DOC to meet its legitimate interests, namely by allowing him to participate in an available alternative non-religious program, but he claims that he was not permitted to do so. Plaintiff also states that he suffered adverse consequences due to his unwillingness and objections to participate in the religious portions of the TCTP, including being denied the DOC's recommendation for parole and denial of parole by the Pennsylvania Board (*See* Doc. 1, Ex. A-10). (Doc. 1, pp. 4-6).

In his three Religious Claims, Claims 1-3, Plaintiff alleges violations of his First Amendment rights and rights under the RLUIPA.  Plaintiff also asserts that Defendants violated his equal protection rights.

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") replaced the RFRA. *See DeHart v. Horn*, 390 F.3d 262 (3d Cir. 2004).  As this Court noted in *Scott v. Beard*, 2006 WL 2645150, * 3, n. 2:

> 42 U.S.C. § 2000cc-1(a)(1)-(2) [RLUIPA]  provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means."

This Court in *Scott* also noted that the case law has found RLUIPA to be constitutional. *Id.* at * 6., n.5; citing *Cutter v. Wilkinson*, 544 U.S. 709 (2005); *Williams v. Bitner*, 285 F. Supp. 2d 593 (M.D. Pa. 2003), *affd.* 455 F. 3d 186 (3d Cir. 2006).

In *Branch v. Russian*, 2005 WL 1137879, * 7 (M.D. Pa.), this Court stated:

> Individuals have a constitutionally protected right to follow the
> religious teachings and practices of their choice. *Employment Div. v.
> Smith*, 494 U.S. 872, 881-83, 110 S.Ct. 1595, 108 L.Ed.2d 876
> (1990). This right may be limited by law of general applicability,
> restricting both religious and non-religious conduct, but reasonable
> accommodations for religious observance may be required in
> certain circumstances. *Id.; see also Wisconsin v. Yoder*, 406 U.S. 205,
> 214-15, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Particularly in the
> prison context, where inmates are precluded from engaging in a
> variety of otherwise permissible activities, officials may be
> required to provide exemptions from restrictions that place a
> "substantial burden" on an inmate's adherence to "sincerely held
> religious beliefs," unless the officials offer compelling reasons for
> refusing such accommodation. *See* 42 U.S.C. § 2000cc-1(a);
> *see also Smith*, 494 U.S. at 884; *Turner*, 482 U.S. at 89-91.

In *Branch*, the Plaintiff inmate claimed that prison policy DC-ADM 807, hygiene and grooming policy, violated his right to free exercise of religion. This Court found that Plaintiff Branch failed to establish the threshold element of such a claim, since he did not explain how long hair affected his religious beliefs and only alleged that he took a vow requiring him to keep long hair. Thus, the Court found that Plaintiff Branch did not establish a burden on the exercise of his religion.

In *Kretchmar v. Beard*, 2006 WL 2038687, * 5 (E.D. Pa.), the Court stated:

> Plaintiff's complaint fails to plead a prima facie case for violations
> of the RLUIPA and § 1983, and must be dismissed for failure to state
> a claim. Under the RLUIPA, the government cannot "impose a substantial
> burden on the religious exercise of a person residing in or confined to
> an institution" unless the government establishes that the burden furthers
> "a compelling governmental interest" and does so by the "least restrictive
> means." 42 U.S.C. § 2000cc-1(a)(1)-(2). Therefore, in order to establish a
> prima facie case for violation of the RLUIPA, a plaintiff must demonstrate
> that a substantial burden has been placed on his or her exercise of
> religious beliefs. *Id.; Warsoldier v. Woodford,* 418 F.3d 989, 994 (9th Cir.)
> (2005); *see U.S. v. Forchion,* No. 04- 949, 2005 WL 2989604,
> at *3 (E.D.Pa.2005) (identifying prima facie case for violations

18

of RFRA, RLUIPA's predecessor statute which applied an identical standard). The government will be found to substantially burden the free exercise of religion when it puts substantial pressure on the adherent to modify his behavior and to violate his beliefs. *Forchion*, 2005 WL 2989604 at *3 (citing *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981)).

Plaintiff fails to establish a valid claim under RLUIPA because he has not met his burden of demonstrating the placement of a substantial burden on the exercise of his religious beliefs. *Id.* * 5.

As discussed above, we have found that Plaintiff Moriarty has raised, for present screening purposes, a Constitutional claim under the First Amendment and Fourteenth Amendment[14] right to free exercise of religion, as well as claims under RLUIPA. *(Claims 1-3, Doc. 1, pp. 4-10). See Davis v. PA Board*, Civil No. 06-2019, M.D. Pa., 12-13-06 Memo, J. Conaboy (At screening stage, District Court permitted inmate to proceed with his First Amendment claims and RLUIPA claims that he was forced to attend and complete the therapeutic community ("TC") religious based program before Defendants would recommend him for parole, since he was a Muslim and the program relied upon a religion to which Plaintiff did not belong).   However, Plaintiff does not specifically state in his Complaint (Doc. 1, pp. 4-20)  how any of the four named Defendants were personally involved in making him exercise a faith to which he did not belong and how any named Defendant was personally involved in the decision requiring him to participate in the TCTP. Plaintiff also fails to state how any named Defendant was involved in the decision denying his request to attend the non-religious alternative substance abuse treatment program available at the

---

[14]The Court in *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 528 (E.D. Pa. 2002), stated that "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citation, punctuation omitted).

prison.  Nor has Plaintiff sufficiently stated how his required participation in the TCTP placed a

substantial burden on the exercise of his religious beliefs.

As the Court stated in *Smith v. Kyler*, 2008 WL 474252, *8 (M.D. Pa.):

> Prisoners retain the First Amendment right to a reasonable opportunity
> to exercise their religious beliefs.  *Cruz v. Beto*, 405 U.S. 319, 322,
> 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *DeHart v. Horn*, 227 F.3d
> 47, 50 (3d Cir. 2000).  However, reasonable opportunities do not extend
> to every religion-related demand that could be made by a prisoner.
> *Cruz*, 405 U.S. at 322, n. 2.  Certain restrictions are justified by the
> valid penological objectives of deterrence of crime, rehabilitation of
> prisoners, and institutional security.  *DeHart*, 227 F.3d at 50-51.
>
> To establish a free exercise violation, the inmate must show that the
> defendants burdened the practice of his religion by preventing him
> from engaging in conduct mandated by his faith without any
> justification reasonably related to legitimate penological interests.
> *See Turner v. Safely*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64
> (1987).  The reasonableness of government action impacting a
> prisoner's constitutional rights is determined by considering the following
> four factors: (1) whether there is a valid, rational connection between
> the governmental action and a legitimate governmental interest; (2) whether
> there are alternative means of exercising the constitutional right that remains
> open to prison inmates; (3) what impact an accommodation of the asserted
> constitutional right will have on guards and other inmates and on the
> allocation of prison resources generally; and (4) whether ready alternatives
> exist for accommodating the prisoner's right at de minimis costs to
> valid penological interests.  *Id.,* 482 U.S. at 89-90, 107 S.Ct. at 2262.

Recently, the Third Circuit Court in *Brown  v. D.O.C. PA*, 2008 WL 435481, * 3  (3d Cir.

2008), stated:

> Summary judgment also is warranted on Brown's claim under
> the RLUIPA, which prohibits the government from imposing a substantial
> burden on a prisoner's religious exercise, even if the burden results
> from a rule of general applicability, unless the government shows that the
> burden is in furtherance of a compelling government interest and is the
> least restrictive means of furthering that interest, *Washington v.  Klem*, 497
> F.3d 272, 277 (3d Cir.  2007).  To establish a violation fo the RLUIPA,

20

Brown had to show that he was forced to choose between following the precepts of his religion and forfeiting benefits otherwise available, or that the government put substantial pressure on him to substantially modify his behavior and to violate his beliefs. *Id.* at 279.

In *Bobko v. Lavan*, 157 Fed. Appx. 516, 518 ( 3d Cir. 2005)(Non-Precedential), the Court stated:

The government violates the First Amendment's Establishment Clause when it requires a prisoner to participate in a drug or alcohol rehabilitation program with a religious component. *See Warner v. Orange County Dep't of Prob.,* 115 F.3d 1068, 1074-75 (2d Cir. 1997);*Kerr v. Farrey*, 95 F.3d 472, 479 (7th Cir. 1996).

In *Bobko*, the inmate Plaintiff filed a §1983 civil rights action in the Middle District of Pennsylvania, and claimed that prison staff and Pennsylvania Board members violated his First Amendment rights by requiring him to participate in the TC program in order to receive parole since he objected and refused to participate in the program due to its religious nature.  The Middle District of Pennsylvania District Court found that Defendants were entitled to summary judgment with respect to Bobko's First Amendment claims since Defendants submitted evidence that a secular approach to drug and alcohol treatment was available in the TC program.  The Third Circuit affirmed the District Court's granting of summary judgment for Defendants on the inmate's First Amendment claims.  The Third Circuit found that Bobko was not denied parole due to his refusal to participate in a religious-based drug and alcohol program.[15]

---

[15]The evidence in *Bobko* showed that Plaintiff inmate had a secular option to any element of the TC program at SCI-Dallas to which he objected based on his Muslim religion and his beliefs.  Thus, the *Bobko* Court stated that  "the requirement that [Plaintiff] complete the TC program as a condition of his parole does not violate his First Amendment rights."  157 Fed. Appx. at 518.

In our case, Plaintiff Moriarty alleges that he was not allowed to participate in the secular

Based on the allegations of Plaintiff Moriarty, the four (4) Pennsylvania state officials named as Defendants in this action are not shown to have personal involvement with the alleged violations of Plaintiff's Constitutional rights under the First Amendment and Fourteenth Amendment, and with violating his rights under RLUIPA.  As in *Branch*, our Plaintiff has not established a burden on the exercise of his religion by his mandatory participation in the TCTP.  He merely states that the Defendants, in accordance with DOC policy that they enacted and endorsed, compelled him to be a participant in the TCTP and "To support and or practice in a religion and or a faith based non-secular belief advanced and or promoted by the state ... ."  Plaintiff does not state how his required participation in the TCTP  placed  a substantial  burden on the exercise of his religious  beliefs  in violation of the First Amendment and Fourteenth Amendment, and his rights under RLUIPA. (Doc. 1, p. 5).  However, for present screening purposes, we find Plaintiff's allegations regarding his First Amendment claims and RLUIPA claims to be sufficient. (Doc. 1, Religious Claims 1-3, pp. 4-10).  However, as stated, we find that, to the extent his Claims 1-3 also rely upon Pennsylvania state law, namely the DACA, the state law claims should be dismissed.  *See Kretchmar v. Beard*, 2006 WL 2038687, * 3.  Also, as stated, we find that Plaintiff should be directed to amend his Complaint in order to name the prison staff personally involved with his Eleventh Amendment and RLUIPA claims.

---

option of the religious portions of the TCTP.  However, as discussed, Plaintiff does not allege that any of the four Defendants were personally involved in the decision refusing his request to participate in the secular option to the religious elements of the TCTP.

Additionally, as discussed above, Plaintiff cannot seek monetary damages against the four Pennsylvania Defendants in their official capacities.  Plaintiff cannot sue any of the Defendants for monetary damages, including punitive damages, in their official capacities since such claims are barred by the Eleventh Amendment.  *See Hafer v. Melo*,  502 U.S. 21, 27-28, 31 (1991)("state officials, sued in their individual capacities, are persons within the meaning of §1983."); *Haynes v. Muller*, 1996 WL 583180, * 2 (E. D. Pa.)(The Eleventh Amendment does not bar inmate from bringing claims seeking monetary damages against state officer Defendants in their individual (*i.e.* personal) capacities).

Thus, Plaintiff should be directed to amend his Complaint to name the responsible prison staff with respect to his First Amendment and RLUIPA claims.  The four named Defendants should be dismissed.  Also, Plaintiff should not include Defendant McVey, or any member of the Pennsylvania Board, as a Defendant in his Amended Complaint, and he should not request monetary damages against any Defendant in his/her official capacity.

Further, as discussed, Plaintiff seems to request injunctive relief and compensatory damages with respect to both his First Amendment claims and RLUIPA claims. (Doc. 1, p. 11 and pp. 22-23). In *Sharp v. Johnson*, 2008 WL 941686, *19  (W.D. Pa.), the Court stated:

> "money damages are not permitted under RLUIPA against the
> Defendants in either their individual or official capacities, this leaves
> only Plaintiff's requests for injunctive relief.

Thus, Plaintiff's claims for money damages under RLUIPA should be dismissed.

### D. Plaintiff's First Amendment Free Speech Claims, Claims 4-7

Since we have discussed the allegations supporting Plaintiff's four so-called Free Speech Claims above, we shall not repeat them.  Suffice to say that Plaintiff claims, in part, that the faith-based Therapeutic Community substance abuse treatment program mandated by the DOC violated his First Amendment free speech rights since he had to remain silent about his objections to its religious content, he had to remain silent about his belief that the TCTP provided unlicenced substance abuse treatment services to inmates, he had to remain silent about the one hour per week law library restriction placed on inmates in the TCTP, and he had to remain silent about his objection to identifying himself as "an alcoholic/addict" as required by the TCTP.  (Doc. 1, pp. 13, 15, 17 and 19).  As noted, in *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 528 (E.D. Pa. 2002), the Court stated that "Inmates clearly retain protections afforded by the First Amendment ... ."

We do not find that any of Plaintiff's objections as to the manner in which the prison conducted the TCTP, which comprise his four so-called Free Speech Claims, Claims 3-7, were protected speech.  *See Rauch v. Pa. DOC*, 2007 WL 4198425, *8 (M.D. Pa.) (inmate arguing with prison staff about the manner in which they conducted the prison substance abuse rehabilitation program (RSAT) program was not protected speech), *citing Wilson v. Schillinger*, 761 F. 2d 921, 925 (3d Cir. 1985)("prisoner's First Amendment rights may be curtailed because of institutional needs").

Since we find that Plaintiff's four Free Speech Claims regarding his objections to the way in which the TCTP was run by prison staff, the expectations of inmates in the TCTP, and the restrictions that were imposed on the inmate participants  do not implicate any protected speech, we shall recommend that Plaintiff's Claims 4-7 be dismissed. (Doc. 1, pp. 12-20).

E. *Fourteenth Amendment Equal Protection Claim*

Plaintiff generally bases, in part, both his three Religious Claims as well as his four Free Speech Claims on the Fourteenth Amendment Equal Protection Clause.  (Doc. 1, p. 4 and p. 12). Plaintiff does not sufficiently state how his three Religious Claims, Claims 1-3, and his four Free Speech Claims, Claims 4-7, are in any way based upon the Fourteenth Amendment Equal Protection Clause.  (*Id*.).  Plaintiff seems to claim that he was discriminated against based on his objection that the TCTP required him to attend faith based portions of the 12-steps utilized by alcoholics anonymous.  (*Id*., p. 10).  Plaintiff does not state that any named Defendant was personally involved in discrimination against him due to his objections to the TCTP.  Plaintiff seems to allege that he was deprived equal protection of the law since he was discriminated against for insisting that his right to religious freedom was being infringed by the TCTP and that the DOC was promoting a religion.

The Court in *Rauch v. PA DOC*, 2007 WL 4198425, *9 stated:

> The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)); *Partway v. Attorney General of of New Jersey*, 81 F.3d 1235, 1267 (3d Cir. 1996).  In the absence of a fundamental right or a protected class, equal protection only requires that a regulation which results in the unequal treatment of an inmate bears some rational relationship to a legitimate penological interest. *See McGinnis v. Royster*, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973); *Hodges v. Klein*, 562 F.2d 276 (3d Cir. 1977).  It is incumbent upon one asserting an equal protection claim to prove the existence of some purposeful discrimination. *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987).  Plaintiff must also

demonstrated that he received different treatment from that received by other individuals similarly situated. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990). Plaintiff is obligated to prove his allegations by either direct or circumstantial evidence. *Pa. v. Flaherty*, 983 F.2d 1267 (3d Cir. 1993) (Intent is a prima facie element of a § 1983 equal protection claim of discrimination) (citing *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). *See also Williams v. Pa. State Police*, 108 F.Supp.2d 460, 471 (E.D. Pa. 2000) ("to prevail on a § 1983 claim, a plaintiff must prove that the Defendant intended to discriminate") (citation omitted).

Our Plaintiff has not alleged that any Defendant purposely discriminated against him on the basis of his race, gender or nationality. "A prison inmate cannot make out a violation of his equal protection rights simply by stating that other inmates were treated differently." *Rauch*, 2007 WL 4198425, *10. Plaintiff does not state that other inmates required to participate in the TCTP were treated more favorably than he by Defendants. Thus, since we find that Plaintiff has not properly stated that he and other inmates were similarly situated with respect to his equal protection claims, we shall recommend that all of his Fourteenth Amendment equal protection claims be dismissed.

F. *Fourteenth Amendment Due Process Claim*

Plaintiff also vaguely bases, in part, both his three Religious Claims as well as his four Free Speech Claims on the Fourteenth Amendment Due Process Clause. (Doc. 1, p. 4 and p. 12). We find that to the extent Plaintiff relies upon the Fourteenth Amendment Due Process Clause to support his claims, any reference to the Fourteenth Amendment Due Process Clause should be dismissed.

Plaintiff seems to claim that his required participation and placement in the TCTP violated his due process rights. The Court in *Rauch v. PA DOC*, 2007 WL 4198425, *7, stated:

"The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . ."  In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it.  *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000); *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002)."

The *Rauch* Court further stated:

[Plaintiff inmate] Rauch has no interest protected by the Due Process Clause in either parole, or a rehabilitative treatment program.  Yet, under certain circumstances, states may create liberty interest that are protected by the Due Process Clause.  *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995).  "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.*  First, Rauch does not have a constitutional right to a substance abuse program.  "It is well-established that those individuals serving criminal sentences have no constitutional right to rehabilitation while in prison."  *McFadden v. Lehman*, 968 F.Supp. 1001, 1004 (M.D. Pa. 1997), *citing Hoptowit v. Ray*, 682 F.2d 1237, 1254-55 (9th Cir. 1982) ("There is no constitutional right to rehabilitation."); *see also Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss."); *Groppi v. Bosco*, 208 Fed.Appx. 113, 115 (3d Cir. 2006) (finding that a prisoner "does not have a constitutional right to participate in the drug treatment program.)  Next, even if Rauch had successfully completed the RSAT program, the PBPP is not required to grant him reparole.  FN9  Because Plaintiff cannot establish that there is a constitutionally-protected interest in participating in a rehabilitative program or in receiving reparole after participation in the RSAT program, he cannot show that his removal from the RSAT program for his alleged failures to follow program guidelines violated his due process protections.

FN9.  The federal constitution does not grant [Plaintiff inmate] Rauch a liberty interest in parole.  *Board of Pardons v. Allen*,

27

482 U.S. 369, 373, 107 S.Ct. 2415, 2418, 96 L.Ed.2d 303
(1987); *Greenholtz v. Inmates of Nebraska Penal and
Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104,
60 L.Ed.2d 668 (1979) ("there is no constitutional or
inherent right of a convicted person to be conditionally
released before the expiration of a valid sentence").  While
"[s]tates may under certain circumstances create liberty
interests which are protected by the Due Process Clause,"
*see Sandin*, 515 U.S. at 483-484, 115 S.Ct. at 2300, the
Pennsylvania Supreme Court has long held that the denial
of parole does not implicate a constitutionally protected
liberty interest because parole is a discretionary matter,
granted only to prisoners who demonstrate the ability to
function in society as a law-abiding citizen.  *See Coady v.
Vaughan*, 564 Pa. 604, 770 A.2d 287, 291 (2001);
*Rogers v. Pa. Bd. of Prob. & Parole*, 555 Pa. 285, 724 A.2d
319 (Pa. 1999).  Parole denial can, however, give rise to a
substantive due process deprivation if it is based on
constitutionally impermissible reasons.  *See Burkett v. Love*,
89 F.3d 135, 139-140 (3d Cir. 1996).

2007 WL 4198425, *7.[16]

Based on *Rauch*, we find that Plaintiff Moriarty did not have a Constitutional protected

interest in participating in a drug/alcohol abuse treatment program or in receiving parole after he

participated in the TCTP.  Nor has Plaintiff stated that he had a due process interest in parole once

he completed the TCTP or that he had a state created liberty interest in parole that was affected by

his participation in the TCTP.  Further, the placement of Plaintiff into the TCTP did not implicate

a liberty interest.  This Court has repeatedly held that the placement of inmates into other prison

---

[16]It is clear that the Pennsylvania Board had sole discretion to grant Plaintiff Moriarty
parole, and not Defendants Rendell, Beard and Johnson.  Additionally, Plaintiff's own exhibits
show that the Pennsylvania Board did not deny Plaintiff parole only due to his failure to
complete the TCTP.   (Doc. 1, Exs. A-3, A-8, A-10).

programs, such as the SMU program, does not implicate their liberty interests. *See Meekins, supra.*[17]

Therefore, we shall recommend that Plaintiff's due process claims be dismissed.

G. *Eighth Amendment Cruel and Unusual Punishment Claim*

Plaintiff only vaguely references the Eighth Amendment with respect to his claims. (Doc. 1, p. 4, ¶ 11. and p. 12, ¶ 17.). Courts have addressed what types of prisoner's claims amount to an Eighth Amendment violation. *See Dantzler v. Beard*, 2007 WL 5018184 (W.D.Pa.). The *Dantzler* Court stated:

> The Third Circuit has cautioned that "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d. Cir.2000), *cert denied,* (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (internal quotes omitted). In determining whether a harm was "sufficiently serious to fall within the Eighth Amendment's zone of protections, *Fuentes v. Wagner*, 206 F.3d at 344, the Third Circuit has described the inquiry as whether the prisoner has been deprived of the "minimal civilized measure of life's necessities." *Young v, Quinlan*, 960 F.2d 351, 359 (3d Cir.1992), *superseded by statute on other grounds*, (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2391, 69 L.Ed.2d 59 (1981)). Proving that one has been deprived of the minimal civilized measure of life's necessities requires proof that one has been denied "basic human

---

[17]This Court has consistently found no liberty interest with respect to claims that due process rights have been violated by not giving an inmate a hearing prior to his placement in the BOP's SMU Program. *See Spencer v. Kelchner,* 2007 WL 88084 (M.D.Pa. Jan. 9, 2007)(Kosik, J.); *Francis v. Dodrill,* 2005 WL 2216582 (M.D.Pa., Sept. 12, 2005); *Stotts v. Dodrill,* Civil No. 04-0043 (M.D.Pa., Feb. 7, 2005). In these cases, this Court has found that an inmate's placement in the SMU does not implicate his liberty interests. This Court also found that the inmates' due process rights were not implicated by their confinement in the SMU, since it did not constitute an atypical and significant hardship. *See also Fraise v. Turner,* 283 F. 3d 506 (3d Cir. 2002) (The Third Circuit in *Fraise* found that the New Jersey DOC did not violate the inmates' due process rights by not giving them notice prior to their placement in the STGMU Program, since the inmates were not deprived of a protected liberty interest). *Id*. at 522-523.

   needs, such as food, clothing, shelter, sanitation, medical care and personal
   safety" from physical assault.  *Griffin v. Vaughn*, 112 F.3d at 709.

*Dantzler*, 2007 WL 5018184 *11.

We do not find that Plaintiff Moriarty has alleged that he was deprived of the minimal civilized measure of life's necessities. Notwithstanding Plaintiff's general references to the Eighth Amendment, Plaintiff does not allege that he was denied any basic human needs.  Thus, we do not find that Plaintiff has stated an Eighth Amendment claim against the four named Defendants.

Therefore, we shall recommend that Plaintiff only be allowed to proceed with respect to his free exercise of religion claim under the First Amendment and his RLUIPA claims.  (Doc. 1, pp. 4-10, Claims 1-3).  However, we will recommend that Plaintiff be directed to amend his Complaint only with respect to the stated three Religious Claims to name the prison officials who were personally involved with the alleged unconstitutional conduct.

## VII.  Recommendation.

Based on the foregoing, we respectfully recommend that all of Plaintiff's claims, except for his First Amendment Free Exercise of Religion Claim (Claim One) and his two RLUIPA claims (Claims Two and Three) (Doc. 1, pp. 4-10) regarding his mandatory attendance in the faith-based portions of the DOC's TCTP, be dismissed entirely from this action under 28 U.S.C. § 1915(e)(2)(B)(ii).  We recommend that the four named Defendants be dismissed for failure of Plaintiff to state their personal involvement with respect to his Constitutional claims.  We recommend that Plaintiff be directed to amend his Complaint with respect to his First Amendment Free Exercise of Religion Claim (Claim One) and his two RLUIPA claims (Claims Two and Three) so that he can name as Defendants only the prison officials personally involved with the alleged

unconstitutional conduct that forms the bases for these three claims.

Additionally, we recommend that Plaintiff's request for specific amounts of monetary relief against Defendants with respect to all of his claims in his Complaint (Doc. 1, p. 11 and p. 21) be stricken.  We recommend that Plaintiff's pendant state law claims under DACA asserted in all seven (7) of his claims (Doc. 1, pp. 4-20) be dismissed since they are barred by the Eleventh Amendment. We also recommend that all of Plaintiff's claims against the Defendant Pennsylvania Board member, McVey, be dismissed since we find she is entitled to absolute immunity.  Moreover, we recommend that Plaintiff's requests for monetary damages, including punitive damages, against all Defendants in their official capacities be dismissed since such claims are  barred by the Eleventh Amendment. We additionally recommend that Plaintiff's claims for money damages under the RLUIPA be dismissed.[18]

Specifically, with respect to Plaintiff's claims that should be dismissed and not included in his amended complaint, we recommend that Plaintiff's four (4) Free Speech Claims, Claims  4-7, be dismissed. (Doc. 1, pp. 12-20).  We also recommend that Plaintiff's First Amendment access to courts claim, his Fourteenth Amendment Due Process claims, and his Fourteenth Amendment Equal Protection claims be dismissed.  We recommend that Plaintiff's Eighth Amendment claims be dismissed.  We recommend that Plaintiff's First Amendment free exercise claim and his RLUIPA claims (Claims 1-3) be allowed to proceed, and that Plaintiff be directed to amend his Complaint to name the responsible prison officials only with respect to these stated three claims.

---

[18]Plaintiff can proceed with his claims for injunctive relief under the RLUIPA.

Finally, it is recommended that this case be remanded to the undersigned for further proceedings only with respect to Plaintiff's First Amendment free exercise claim and his RLUIPA claims (Claims 1-3, Doc. 1, pp. 4-10).[19]

s/ Thomas M. Blewitt
THOMAS M. BLEWITT
United States Magistrate Judge

Dated: September 25, 2008

---

[19]As stated above, we recommend all four named Defendants be dismissed, and that Plaintiff be directed to file an Amended Complaint with respect to his First Amendment free exercise claim and RLUIPA claims since none of the named Defendants are alleged to have been personally involved with these claims.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEAN MORIARTY, | : | CIVIL ACTION NO. **3:CV-08-1532** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| EDWARD RENDELL, GOVERNOR OF | : | |
| PENNSYLVANIA, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **September 25, 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

33

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: September 25, 2008**